LEONIDAS F. DREYFUS *v.* WILLIAM A. GAGE ET AL.

1. LANDLORD AND TENANT. *Waiver of lien. Deed of trust. Advances to tenant.*

A landlord who waives his lien to the extent of a designated sum in order that the tenant may secure advances from another by executing a deed of trust on his crops to be grown on the leased premises, cannot escape the effect of the waiver because the deed of trust recited that the advances were to be used also in making a crop on other lands, and did not expressly require advances to the full extent of the waiver.

2. SAME. *Assignee of rent notes. Estoppel.*

An assignee of notes given by a tenant to his landlord for rent is estopped to assert the priority of his statutory lien against one

who makes advances to the tenant on the security of the land-
lord's waiver and the tenant's trust deed on the crops to be
grown on the demised premises, when such assignee has con-
cealed from him his ownership of the notes and induced him to
believe that the landlord's waiver and the tenant's trust deed
will operate to give him a first lien on the crops.

FROM the chancery court of Bolivar county.

HON. A. McC. KIMBROUGH, Chancellor.

Dreyfus, appellant, was complainant in the court below, and
Gage and others, appellees, were defendants there. From a
decree in defendants' favor the complainant appealed to the
supreme court. The facts are stated in the opinion of the
court. [For a decision of a former appeal in the same case,
see *Dreyfus* v. *Gage,* 79 Miss., 403.]

*J. S. Hicks,* and *Charles Scott, Woods & Scott,* for appellant.

The waiver of Mrs. Hicklin is contained in a letter addressed
to the tenant, stating that upon certain conditions the rent
upon the Hicklin property will be waived. The party in
favor of whom the rent will be waived is "any person" who
will comply with the terms thereof, and the paper is certainly
a conditional waiver—an inchoate waiver, which at any time
may be made a valid and binding waiver, but which has no
force and effect until the terms thereof are complied with.

What are the conditions which "any person" can take ad-
vantage of and thereby make the conditional waiver a binding
contract between Mrs. Hicklin and himself?

(a) "Any person," "must aid you," "to the extent of $1,-
200."

(b) Such person must not only aid you to the extent of
$1,200, but must in addition agree to aid you to make and
gather a crop for this year (1899).

(c) This $1,200 must be advanced and aid given on "my
plantation," not on any other plantation, but on "my planta-
tion" in Bolivar county.

The parts of the above sentences in quotation marks are taken literally from the conditional waiver; the word "my" referring to Mrs. Hicklin, and the word "you" to W. D. Moore.

From the construction of the instrument it is plain that it was on condition of the "person who undertakes the business"— that is, advances you.

(a) To agree to aid W. D. Moore to make and gather a crop.

(b) That he must advance at least $1,200 for this purpose.

(c) That the advance must be made to be used on the Hicklin place alone.

The question between Gage & Company and Dreyfus is one of *estoppel in pais,* it not being contended that Dreyfus waived in writing or otherwise the rent claim.

The general law of estoppel may be stated to be "a preclusion of a person to assert a fact which has been admitted or determined under circumstances of solemnity, such as, by matter of record, or by deed, or by an act *in pais* inducing another to believe and act upon to his prejudice." 11 Am. & Eng. Ency. Law, 387.

*Estoppel in pais* are: (1) Misrepresentation; (2) Acquiescence and Silence.

The rule being that where A by words has represented, or by his silence when in good conscience he should speak out, intentionally or through culpable negligence, induces B to believe the existence of certain facts, and B has rightfully acted upon this belief, so that he will be prejudiced if A is permitted to deny the existence of such facts, then A is estopped from interposing a denial of such facts. 11 Am. & Eng. Ency. Law, 421.

The effect of estoppel is to put the party entitled to the benefit of the estoppel in the same position as if the thing represented were true. 11 Am. & Eng. Ency. Law, 423.

Fraud is an essential element of estoppel, and to establish

estoppel the proof must be clear, and unequivocal, and must also be affirmative. 11 Am. & Eng. Ency. Law, 424; *Roach v. Brannon,* 57 Miss., 490.

The representation must be inconsistent with the evidence proposed to be introduced. 11 Am. & Eng. Ency. Law, 420.

Statements of opinion where facts are open to both parties will not act as an estoppel. 11 Am. & Eng. Ency. Law, 425.

In order to establish an estoppel knowledge of all the facts is necessary. *Houston* v. *Witherspoon,* 68 Miss., 190.

And so knowledge of the facts by the party setting up the estoppel will preclude him from setting up the estoppel. 11 Am. & Eng. Ency. Law, 434.

The party must act upon the representation, and not upon the advice, of another, or upon knowledge acquired from another. 11 Am. & Eng. Ency. Law, 434.

There must be damage to the party setting up the estoppel by reason of the false statements. 72 Miss., 809.

In short, to establish *estoppel in pais* there must be: First— An admission inconsistent with the evidence afterwards sought to be given. Second—Action by the other party upon such admission. Third—Injury to him by allowing the same to be disproved. *Turnipseed* v. *Hudson,* 50 Miss., 429.

To establish estoppel by conduct there must be: First—A concealment or misrepresentation of the material facts. Second—The representation must be made with the knowledge of the facts. Third—The party to whom it was made must have been ignorant of the truth of the matter. Fourth—It must be made with the intention that the other party shall act upon it. Fifth—The other party must be induced to act upon it. *Turnipseed* v. *Hudson,* 50 Miss., 429.

*Moore & Clark,* for appellee.

Dreyfus very fully understood the nature of the security demanded by Gage & Company. He used every effort in his power to induce Gage & Company to accept the business, urged

upon them again the solvent credit they were extending when protected by this waiver rent, and never for one instant gave them or their attorneys the slightest intimation that he held the rent notes against this property, or that there would be any claim due him in preference to that of Gage & Company in the event they took this business.

By his own deposition he has stated clearly and distinctly that, having full knowledge of the fact that Gage & Company had demanded a waiver of the landlord's lien for rent, and that he further knew waiver had been submitted to them, which they did not and would not accept, but were demanding a further and more unconditional waiver, he deliberately concealed the fact that he had the rent notes in his possession. He thought it was essential to his own interest to say nothing about this. Silence, such as this, becomes a fraud and necessarily works an estoppel upon the party guilty of the fraud. *Staton* v. *Bryant,* 55 Miss., 261; *Roach* v. *Brannon,* 57 Miss., 490; *Kelley* v. *Wagner,* 61 Miss., 299; *Houston* v. *Witherspoon,* 68 Miss., 190; 11 Am. & Eng. Ency. Law (2d ed.), 421.

This cause was, on the former appeal, remanded to the lower court to be disposed of upon the merits, leaving, as we have above indicated, to the chancellor to pass upon the effect of the testimony and the estoppel by conduct, and all of the other mere questions of fact in this record. We do not believe that there is any ground to cavil at the decision rendered by the chancellor, since that decision was clearly right, but the doctrine is well established that in a case depending upon fact, where the evidence is conflicting and the mind cannot repose with confidence upon a conclusion in favor of either party, this court will not disturb a decision. *Wilson* v. *Beauchamp,* 50 Miss., 24; *Valentine* v. *McGrath,* 52 Miss., 112; *Randel* v. *Yates,* 48 Miss., 685; *Harrington* v. *Allen,* 48 Miss., 492; *Apple* v. *Ganong,* 47 Miss., 189; *Davis* v. *Richardson,* 45 Miss., 499; *Allen* v. *Smith,* 72 Miss., 689.

The presumption in favor of a decree includes conclusive-

ness, both of law and of fact. It will not be disturbed unless shown to be clearly wrong, being analagous in this respect to the verdict of a jury. *Partee* v. *Bedford,* 51 Miss., 84; *Derdeyn* v. *Donovan,* 81 Miss., 696.

Argued orally by *A. Y. Scott,* for appellant, and *Fred Clark,* for appellees.

TRULY, J., delivered the opinion of the court.

Upon the former appeal in this case (79 Miss., 406; 30 South., 691) it was decided that this "controversy is one as to priority of liens between the mortgagees and the landlord," and the cause was remanded for determination on the merits of the questions of waiver, estoppel, and priority of liens. Omitting consideration of all questions not necessary for decision, and accepting the finding of the chancellor upon conflicting testimony as conclusive, we find the following facts to exist: That Mrs. F. S. Hicklin was the owner of a plantation which was leased for a term of years to one W. D. Moore, and that the notes of the tenant, representing the annual rent, had been, with the knowledge of the tenant, assigned and delivered to L. F. Dreyfus. During the year 1898, Moore, the tenant, had been supplied by Dreyfus, and paid the rent for that year to him; but, the crop raised being insufficient to pay his account, a balance of $2,400 was due Dreyfus at the close of the year's business; this balance being secured partially by a trust deed on work stock, worth approximately $600. In the early part of 1899, Dreyfus refusing to further supply Moore, the tenant, he applied to appellees for $1,200 in advances to enable him to make and gather a crop on the Hicklin place. After some negotiations, appellees agreed to make the advances upon condition that the lien of the landlord for rent should be waived, and that Dreyfus should transfer his security on Moore's personalty. These terms being satisfactory to Moore, the matter was by appellees submitted to their attorneys to

prepare necessary papers. The landlord, Mrs. F. S. Hicklin, signed a waiver as required by appellees; and W. D. Moore having agreed with Dreyfus to pay him $300 out of the moneys to be advanced by appellees, and $300 out of his logging business, Dreyfus transferred to appellees, without recourse, the security which he held. During the course of the dealings between Moore and the attorneys for appellees, and before the final consummation of the transaction, Dreyfus urged the attorneys of appellees to make the loan to Moore, giving reasons why he personally could not continue the business; and, concealing the fact that he was the assignee of the rent notes, he represented that a waiver from Mrs. F. S. Hicklin, the owner of the land, would give appellees a prime lien on all the crops produced, and would make the loan absolutely secure. Acting on these representations, and in complete ignorance of the fact that Dreyfus was the holder of the rent notes, appellees' attorney demanded and received a waiver to the amount of $1,200 from Mrs. F. S. Hicklin, had the securities held by Dreyfus transferred to appellees, took a trust deed from Moore on crops and work stock, closed the loan, and forwarded the papers to appellees. The waiver of Mrs. F. S. Hicklin not being in form satisfactory to appellees, they demanded and received another waiver of rent, signed by her, and thereupon advanced Moore a portion of the $1,200 agreed on. Afterwards they required Moore to furnish additional security, which being done, other moneys were advanced during the year, aggregating a sum in excess of the $1,200 agreed on. After the crop was made and gathered, appellees had the trustee in their trust deed on such crops institute a suit in replevin against W. D. Moore for the possession of the fifteen bales of cotton raised on the Hicklin place, and other cotton not now in controversy. W. D. Moore gave bond, and the cotton was delivered to the sureties on his bond. Before the replevin suit was tried, L. F. Dreyfus filed his bill of complaint in the chancery court, enjoining the prosecution of the suit in replevin,

and averring that he had a prime lien on the cotton under the assignment to him of the rent note and landlord's lien. After voluminous pleadings, not necessary to detail, this cause was finally heard on pleadings and proof, and a decree rendered dissolving the injunction and awarding appellees the proceeds of the cotton; the chancellor holding that Mrs. Fannie S. Hicklin was bound by her waiver, and that L. F. Dreyfus was estopped from setting up any claim as assignee of the rent note and landlord's lien. From that decree this appeal is prosecuted by all parties defendant.

The first contention presented on behalf of appellant is that the court erred in holding that Mrs. F. S. Hicklin was bound by her waiver, because, it is said, appellees did not comply with the conditions expressed therein. To properly weigh the argument on this point, it is necessary to understand the relative positions of the parties, the circumstances which rendered the waiver necessary, and the considerations which induced Mrs. Hicklin to execute it. The conditions which confronted Mrs. Hicklin were these: Her plantation was leased to a man whose personalty and work stock were incumbered to an amount largely in excess of their value. The merchant who had advanced him money and supplies the previous year refused to continue the business, so that it became necessary for the tenant to procure elsewhere sufficient money to enable him to conduct his planting operations during the current year, and this he was unable to do, except upon condition that the lien of the landlord on the crops to be raised should be waived, and the existing trust deed upon his personalty should be transferred. The waiver was executed, therefore, as an inducement to some other merchant to make the necessary advances to the tenant, and thereby prevent the plantation from lying uncultivated. Under these circumstances, this was a perfectly natural arrangement. Mrs. Hicklin realized that without the waiver her tenant could not obtain advances, and, as a necessary consequence, she could receive no rent; while, by waiving

her lien to a limited extent, she would insure the cultivation of her land, and still retain her right to demand as rent any cotton remaining after the amount specified in her waiver was fully paid. With this object in view, she executed an express waiver of her lien as landlord in favor of any person who would advance her tenant $1,200 to enable him to make and gather a crop during the year on her place. The motive of Dreyfus in assigning without recourse his trust deed on the personalty of Moore is also perfectly apparent. Not desiring to risk further advances to a customer whose business had not proved profitable the previous year—anxious to shift the burden and risk—he was still more concerned in having Moore's farming operations continue uninterruptedly. Under the agreement between Dreyfus and Moore, if they could succeed in inducing appellees to advance Moore, Dreyfus was to receive $300 of the money so advanced, and, in addition, $300 out of Moore's logging business; thereby securing the full value of the security which he waived. In addition to this, he would be entitled to the proceeds of any cotton which Moore might have after the account for advances was fully paid; such proceeds to be applied to the satisfaction of the rent note of which he was the assignee. For these reasons he was ready and willing to assist in the consummation of a transaction by which he risked nothing, but, on the contrary, had everything to gain. The fact that the trust deed from Moore to appellees, as beneficiaries, stated that the money was to be used in making a crop on other lands, in addition to the Hicklin place, and that it contained no express stipulation obligating appellees to advance the sum of $1,200 therein mentioned, under any and all circumstances, does not affect the rights of the parties concerned. The waiver was express and absolute in its terms, with the sole condition that the person undertaking Moore's business was to aid him "to make and gather the crop for this year on the Hicklin plantation;" and the rent lien was, in favor of any person so aiding the tenant, thereby waived "to

the extent of $1,200." Appellees undertook the business under the terms of the waiver, and advanced not only the amount therein specified, but also a sum in excess thereof, and all that was required to "make and gather" the crop on the Hicklin plantation. This was all that Mrs. Hicklin stipulated for, and was a full compliance on the part of appellees with the condition expressed in the waiver. Conceding that any part of the money advanced by appellees was by Moore used in cultivating crops not on the Hicklin place, this would be simply a question of fair dealing between the landlord and her tenant, and would not affect the rights of appellees to hold Mrs. Hicklin to the terms of her waiver. It was certainly not the intention of the parties that appellees' rights under the waiver were to be contingent upon the manner in which Moore used the money advanced, or the purpose to which it might be devoted. The chancellor decided, as a finding upon a disputed question of fact, that appellees fully complied with all the conditions and stipulations of the waiver, and the facts above detailed prove conclusively that this decision was fully warranted. The failure of the crop was a contingency which confronted Mrs. Hicklin when she executed the waiver, and the fact that she received no rent for the year 1899 is one of the misfortunes incident to the leasing of lands.

The second contention of appellant is that the court erred in holding that L. F. Dreyfus was estopped by his conduct and declarations from claiming any landlord's lien as assignee of the rent note on the cotton in question. The doctrine of estoppel by conduct rests upon the principle that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others have acted so that injury would befall such others if the truth of the fact or previous declarations should afterwards be denied. *Staton* v. *Bryant,* 55 Miss., 261. The rule is again correctly stated as follows: "It is a universal law that if a man, either by words or conduct, has intimated that he consents to an act which has been

done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct. When others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secured, whether contested at law or in equity." Bigelow, Estoppel, ch. 18. Viewing the conduct and declarations of Dreyfus in the light of the rule above announced, we find, according to the testimony which the chancellor accepted as true, that Dreyfus, while the owner by assignment of the rent note, and alone having the right to assert a landlord's lien upon all agricultural products raised on the leased premises, intentionally concealed that fact from the attorney and representative of appellees, and actively assisted W. D. Moore in procuring advances from appellees by advising the attorney in question that the security would be ample for the advances to be made, and that the waiver from Mrs. Hicklin of her lien as landlord would vest in appellees a prime lien on all the agricultural products which Moore might raise on the Hicklin plantation. We find, further, that, acting upon these false and fraudulent representations, appellees procured the waiver; and we find, from Dreyfus' own statement, that he was advised of this fact, and did not object thereto, but deliberately persisted in the concealment of his claim as assignee, allowing appellees to deal to their detriment on the faith of their belief in a state of facts which he had intentionally led them into believing, and which he knew to be false. Under such circumstances it would be shocking to every sense of right, as it would be violative of the principle of common honesty, to now allow this claim to be asserted, to the injury of the parties so intentionally and fraudulently misled. It would be hard to imagine a case more ap-

propriate for the application of the doctrine of equitable estoppel than the one at bar. Every element needed is here found: A false representation and a concealment of material facts, made, with actual knowledge of the facts, to one actually and permissibly ignorant of the truth, with the intent that it should be acted on, and the innocent party induced to act on it, and to his detriment and loss; the one not only concealing his knowledge of the true facts, but asserting the existence of an entirely different state of facts. To allow such a one now to enjoy the fruits of his iniquitous dealing would be to place a premium upon successful deception, fraud, and dishonesty. This we decline to do. We concur heartily with the chancellor in this conclusion.

*Affirmed.*