COFFEY *v.* LAND.

(Division B.   April 6, 1936. ˙ Suggestion of Error Overruled May 4, 1936.)

[167 So. 49.   No. 32187.]

**F. E. Leach**, of Carthage, for appellant.

**R. B. Walker,** of Carthage, for appellee.

**J. D. Guyton,** of Kosciusko, for appellee, on suggestion of error.

**Griffith, J.**, delivered the opinion of the court.

On February 17, 1930, O. J. Truss and wife executed a chattel mortgage to appellee as trustee for a mercantile firm to secure an indebtedness therein named and which indebtedness was due November 1, 1930. This deed of trust was filed for record February 19, 1930, and was actually recorded the following day. In addition to other property, the said deed of trust included all crops to be grown by Truss, on the lands owned by him, during the years, 1930, 1931, and 1932.

On March 1, 1932, Truss and wife executed a deed of trust to appellant to secure a note due October 1, 1932, and this deed of trust included also all crops to be produced by Truss, on the lands owned by him, during 1932. The crop for the year 1932 was delivered to appellant, and appellee instituted an action of replevin to recover the property so delivered. The cause proceeded to final judgment before the justice of the peace, who decided the case in favor of the possession under the second deed of trust. An appeal was taken, and in the circuit court the case was submitted to the judge without a jury, and the judgment there was in favor of the holder of the first deed of trust.

The entire proceedings being at law, the question has been directly and sharply presented whether a deed of trust given in 1930 on a crop to be produced in 1932 has any validity at common law; and this precise question we shall answer in the negative; but in what we shall say here we must be understood as confining our

decision strictly to annual crops, those which must be annually planted, and not to those which annually recur in the ordinary course of nature without annual planting, as, for instance, the fruit of orchards and the like. And, moreover, we must be understood as dealing with crops and with no other class of property.

The authorities all agree that under the strict and ancient common law an unplanted crop was not the subject of a valid deed of trust or mortgage, even as between the parties thereto. This rule was well understood in this state; so that to meet the necessities of our people in regard to this question there was enacted a statute, section 7, chap. 465, Laws 1867, providing: "That it shall be lawful to convey by way of mortgage or deed of trust any crop of cotton, corn or agricultural product, being produced or to be produced, within fifteen months from the date of such mortgage." This provision was brought forward in subsequent Codes, until it was expressly repealed by chapter 77, Laws 1886, since which time no such statute has existed in this state.

Most of the decisions of our courts dealing with mortgages and deeds of trust on annual crops were made during the years when the quoted statute was in existence; but when we take those decisions, and those before the enactment of the statute and those since its repeal, we find that, when the precise facts in each case and the points necessary to decision are considered, all the cases in reference to annual crops may be grouped into three classes: (1) Those where the deed of trust or mortgage was given during the year and upon crops to be produced during that year, or when the deed of trust or mortgage was executed within a time so close to the beginning of the year that it could be held that preparations were then being made for the planting and production of the particular crop; (2) those where the proceedings were in equity and the court was considering the equitable validity of such mortgages or deed of

trust; and (3) those where the mortgage or deed of trust was given to the owner of the land to secure the payment of rents, and wherein, although such mortgages or deeds of trust covered the crops of several years in succession the actual basis of the decisions in such cases was, as said in Everman v. Robb, 52 Miss. 653, 661, 24 Am. Rep. 682, that: "Rent is said to issue out of the land. It was not, perhaps, extravagant to say that the landlord has a sort of contingent interest in the crops, which remains dormant until exerted to enforce what may be due him. . . . The incumbrance of the crops with an express lien is but to give strength and completeness to the imperfect rights of the landlord." But any discussions of liens for rent have now become largely, if not entirely, academic by reason of the landlord's lien statute, section 2186, Code 1930, and which first appeared among our Codes as section 1301, Rev. Code 1880.

And there is no occasion here to discuss the cases and holdings mentioned under numeral (2) in the foregoing paragraph, because this court from the beginning down to the present time has held that mortgages and deeds of trusts on crops to be produced in subsequent years on land which the mortgagor owns or in which he has an interest in possession are good in equity. See, for instance, the recent cases, Prentiss Mercantile Co. v. Thurman, 173 Miss. 6, 161 So. 746, and Butler Mercantile Co. v. Cruise (Miss.), 166 So. 325. The case here before us is not in equity, but is strictly at law, as we have already mentioned.

The question arises, then, as to why we would hold such mortgages or deeds of trust on annual crops to be produced in subsequent years good in equity and at the same time deny their validity at law; and why it is that, while at the ancient common law a mortgage or deed of trust is not good upon an annual crop not already planted, we have nevertheless held that such a mortgage

or deed of trust is good at law if given at any time during the year or when the deed of trust was executed within a time so close to the beginning of the year that it could be reasonably held that preparations were then being made for the planting and production of the particular crop. See, for instance, the language used in Russell v. Stevens, 70 Miss. 685, 687, 12 So. 830.

Whenever it is declared under any long line of judicial precedents that a transaction is invalid at common law and yet is valid and enforcible in equity, it will be found that the distinction is preserved out of consideration of the fact that if such a transaction were bound up in the inflexible rules of the common law, injustice and hardship and general insecurity might result, whereas, if left to equity with its broader and more flexible powers and processes, a more perfect justice may be attained and the general security better served. We shall later herein seek by illustration to show that this is precisely the case as to annual crops to be produced in subsequent years. And as to any advancements made under our decisions, on the precise subject now under discussion beyond the strict bounds of the ancient common law, we would call attention to the fact that the common law is not an institution of exact and unchangeable rules, but is a system which progresses so as to accord with the general customs, usages, habits, and necessities of the people of the state, so far as agreeable to justice and reason; and this is at the same time to say that no court may, under the notion of making progress under the common law, pronounce any rule as being an allowable advancement upon the ancient common-law rule, when the effect of it would be mischievous in its operation, contrary to the substantial interests of our people, and which in its tendencies would be subversive of their freedom.

This state is largely agricultural in its interests; most of our people are engaged in that business. And most

of them so engaged are obliged at or near the beginning of each year to obtain advancements from merchants and lenders of money for the making of the crop of that year. It was therefore in order to accord with the general customs, usages, habits, and necessities of our people that this court has heretofore held, and we now reaffirm, that a mortgage or deed of trust may be given, good at law, upon a crop to be produced during the year in which the deed of trust or mortgage is executed, and this may be before the crop of that particular year is planted, and may be given even before the beginning of the year, if so closely connected both in point of time and in purpose that it may be said that preparations were then being made for the planting and production of the particular next succeeding annual crop.

But further than this, upon this precise subject, we cannot advance the common law, and we shall illustrate the reasons for this attitude. We will suppose that a farmer in order to secure the necessary financial aid to make a crop on his land for the year 1936 has given, at or near the beginning of that year, a deed of trust on all the crops to be produced by him on his land for that year, and has included in the deed of trust all his crops for the years 1937 and 1938. During the year 1936, he is afflicted with sickness, or floods destroy his crops, or pests such as the boll weevil ruin the output, with the result that at the end of the year he is able to pay only a part of the debt which he has incurred. And suppose at the beginning of the year 1937 he approaches his mortgagee with a request for supplies for that year, and the mortgagee refuses because he is going out of business, which was the case in Butler Mercantile Co. v. Cruise, supra, or refuses for any other reason. If the deed of trust be good at law, then the mortgagor cannot give another valid deed of trust to any other merchant or money-lender, and the farmer would be compelled to abandon his farm and seek other employ-

ment, whereas this very matter of abandonment of the land by the tillers of the soil has within late years become one of the great public problems of the times.

Or suppose that instead of refusing further financial aid by way of supplies to make the crop for the year 1937, the mortgagee will agree to do so only upon condition that the farmer will pay fifty or one hundred per cent more for each article supplied than cash customers would pay for the same article. Under such terms he could never pay out and would occupy a position but little better than that of a peon.

But under our decision in Butler Mercantile Co. v. Cruise, the farmer in such cases, and wherein the equities are as above mentioned, could in 1937 go to another merchant and give a deed of trust on his crop to be produced that year, and the second deed of trust given to the last-mentioned merchant would be good to cover all reasonable supplies and advances actually made by him for the year 1937; because, although the first deed of trust was good in equity for the year 1937, the merchant who furnished the supplies and advances to make the crop under the second deed of trust would have the higher or better equity, in that it was by his help and by his means that the crop was made and without which it might not have been made at all. Thus it is that equity may work out this matter with more perfect justice and may better serve the general interests and security of the people of the state.

It follows that the judgment must be reversed and the case remanded, with directions that the proper judgment be rendered in favor of appellant; but this will be done without prejudice to the rights of the first mortgagee to institute a proper proceeding in equity if, under the facts which might be more fully shown, there be any equities to enforce.

We note that much has been said in the argument in reference to the twelve-month chattel mortgage statute,

section 2130, Code 1930. An examination of the language used by the court in Coffeeville Bank v. Stone, 153 Miss. 811, 121 So. 816, and in Prentiss Mercantile Co. v. Thurman, supra, will disclose that the cited statute has no application to the case here before us.

Reversed and remanded, with directions.