## MYERS v. HOBBS et al.
### No. 8784.

Circuit Court of Appeals, Fifth Circuit.

Jan. 3, 1939.

Robert M. Vaughan, Atty., Department of Justice, of Washington, D. C., Chester L. Sumners, Asst. U. S. Atty., of Corinth, Miss., and Lester M. Sack, Asst. U. S. Atty., of Clarksdale, Miss., for appellant.

G. Edw. Williams, of Clarksdale, Miss., for appellees.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

We have not the pleadings and evidence in this record, but a stipulation in lieu of them. There was an interpleader concerning the proceeds of two cotton crops raised in the year 1931 by two tenants on lands of Means Johnston; the claimants being on one side Wm. I. Myers, Governor of the Farm Credit Administration of the United States as mortgagee of the crops, who furnished the tenants money to make the crops, Johnston waiving his landlord's lien for rent; and on the other side Mrs. Inda D. Hobbs, as guardian, the holder of a mortgage made in 1928 against the land and rents, and of rent notes of the tenants for 1931 executed and transferred to her shortly after the money was furnished by the Credit Administration. The Credit Administration knew of the land mortgage because "the trustee in it was notified that a waiver subordinating the rents to the lien of the Government mortgage would be necessary, however such a waiver was not obtained." Whether the waiver was refused, or the matter was overlooked, or the waiver from Johnston was considered sufficient does not appear. Mrs. Hobbs through her trustee thus appears to have known that advances to make the crops were being made by the Credit Administration. The tenants were "without other financial means and facilities." The crop proceeds will pay either the rents or the advances, but not both. The district court held Mrs. Hobbs entitled to priority as the holder of the landlord's lien for rent. Appellant contends that the lien was subordinated to the mortgages he holds on the crops.

The statutory origin, the nature and the priority of the landlord's lien for rent and supplies (if he advances any) under Mississippi law are fully explained in Newman v. Bank of Greenville, 66 Miss. 323, 5 So. 753. It was there held that the transfer by indorsement of the rent note passed the lien as an incident of the rent to the indorsee who thus acquired a better claim against the crop than that of a mortgagee of it for supplies. From the cases of Dreyfus v. Gage & Co., 84 Miss. 219, 36 So. 248, and Alexander v. Zeigler, 84 Miss. 560, 36 So. 536, we learn that the landlord may effectually waive the landlord's lien and subordinate it to a mortgage of the crop for supplies, without transferring or surrendering the rent note. In the former case the transferee of the rent note who had really acquired the landlord's lien was held estopped to assert it when he had actively encouraged the mortgagee for supplies, who did not know of the transfer, to put out his money.

These principles yield the following conclusions in this case. Mrs. Hobbs is not estopped, because she neither did nor said nor concealed anything so far as appears. The Credit Administration has a clear legal right against the crops, having a mortgage on the crops and a waiver of the landlord's lien if Johnston is the landlord. Johnston, after waiving the lien, and after action on the waiver by the supplier, could not revive the lien, and the transfer of the rent notes thereafter made to Mrs. Hobbs would transfer no lien to her. To defeat the crop mortgages she is driven to say either that Johnston, because of her mortgage on the land, was not landlord, or that her mortgage, because of its language about the rents, gives her an earlier and better right to them.

We are convinced that the mortgage does not make her landlord. Its language, so far as it appears in the record, is: "For the consideration hereinafter mentioned, we, Means Johnston and Annie Johnston, husband and wife, do hereby sell, convey and warrant unto A. M. Hobbs, who is hereby appointed trustee with full power and authority to execute this trust, the following described property (describing the land). Also the entire interest of grantors herein or any of them, now owned and hereafter acquired in and to any rent contract or any rent notes now owned and hereafter acquired * * * during the years 1929, 1930, and 1931, respectively, on any and all the lands above described." A mortgage in Mississippi, though in form a conveyance with a defeasance on payment of the debt, passes no title but only creates a lien,

leaving the general ownership in the mortgagor; and a deed of trust to secure a debt has only that effect. Carpenter v. Bowen, 42 Miss. 28, 49, 50; Buck, Agt. v. Payne & Raines, 52 Miss. 271, 279. Where there is an effort to make the rents part of the security, as here, there is only a lien on them. Until foreclosure or possession taken by the mortgagee the mortgagor is in rightful possession. He may use the land himself; or he may rent it out and arrange for the making of crops by a tenant. When the mortgagor in possession rents the land out, he and not the mortgagee is landlord. He under the statute has a lien for the rents and the supplies he may furnish. (Code Miss.1930, § 2186.) With tenants such as those here involved, who cannot go forward without aid, no crops will be made and no rents realized unless he as landlord furnishes supplies or can procure others to furnish them. The present mortgage ought not to be construed as preventing this. It mentions no landlord's lien and does not forbid the waiver of it if necessary to procure supplies. The mortgagee's trustee, when advised that supplies could be had only if the lien were waived, does not appear to have protested or objected. It seems most natural to conclude that there was acquiescence in the waiver made by the landlord Johnston, probably a supposition on all sides that a waiver by him was sufficient. After waiver Johnston took rent notes and transferred them to his mortgagee, apparently in pursuance of the above quoted provision in the mortgage, and as he had done in 1929 and 1930. Prior to the transfer the mortgagee had no landlord's lien because she was not landlord, and subsequent to it she had none because the landlord Johnston had none to transfer. She thus had no legal landlord's lien to oppose to the legal lien of the crop mortgages.

■ No legal lien arose by reason of the mortgage itself. The rent contracts or notes of 1931 could not be conveyed in 1928 because they did not exist. These tenants had no leases till 1931. When they became tenants in 1931 there was at most an equitable right to have the rent contracts or notes assigned. But equity would not compel this if it would be inequitable to do so, and we think it would be. The Credit Administration acted in good faith, with no purpose to overreach or injure anyone, but rather to assist in making crops which might inure to the benefit of all concerned. The tenants could not make a crop without assistance. Nothing indicates that the landlord Johnston was able to help them, or that Mrs. Hobbs would or could. We feel safe in saying that if the Credit Administration had not come to their aid there would have been no crops raised and no rent paid. In Butler Mercantile Co. v. Cruise, 175 Miss. 200, 166 So. 325, a crop mortgage to secure advances purported to cover also the crop of the following year. It was held to be only an equitable mortgage as respects the future year, and that when during that year the tenant was refused advances by the mortgagee, and mortgaged the crop to another for supplies to make a crop which otherwise would not have been made, the latter mortgage had the superior equity. In Coffey v. Land, 176 Miss. 114, 167 So. 49, there was an older mortgage on land purporting to include also the crops of future years, much as Mrs. Hobbs' mortgage attempts to include rents of future years. The mortgagor, in order to make a crop in a subsequent year, mortgaged it for supplies. It was held that the prior mortgage was only an equitable one on the crops of future years, and that the new mortgage was to be preferred "because, although the first deed of trust was good in equity for the year 1937, the merchant who furnished the supplies and advances to make the crop under the second deed of trust would have the higher or better equity, in that it was by his help and by his means that the crop was made and without which it might not have been made at all. Thus it is that equity may work out this matter with more perfect justice and may better serve the general interests and security of the people of the state." [page 51.] This decision was made on elaborate consideration of the history of legislation and jurisprudence of the State and the public policy thereby manifested. We take it as establishing a principle controlling here, and rendering the Credit Administration's crop mortgage superior to the equitable rights of Mrs. Hobbs under her mortgage, as well as to any legal right which she acquired by the transfer of the rent notes after the landlord's lien for rent had been waived. The Cruise Case is not distinguished because Mrs. Hobbs is not shown to have refused to make advances herself. She did not insist on doing so when

she knew they were necessary, and there is no claim that too much was advanced. She is no worse off when these advances are paid first than she would be if she had made them herself.

The judgment is reversed with direction to enter a decree giving priority to the crop mortgages held by appellant.