H. & C. Newman, Inc., *et al. v.* Delta Grocery & Cotton Co.*

(Division B. April 6, 1925.)

[103 So. 373. No. 24832.]

Landlord and Tenant. *Landlord waiving lien in favor of person supplying tenant, who took deed of trust on crops liable to extent of waiver on collecting note out of crops; before landlord can be held on waiver of lien on crops raised by tenant by person holding deed of trust from tenant, other securities embraced therein must be resorted to.*

Where a landlord having a landlord's lien waives the lien in favor of the person who supplied the tenant to a given amount, and a

person acting on such waiver supplies the amount and takes a deed of trust on the crops and other property of the tenant to secure his debt, and where a note by a subtenant is given to the chief tenant and transferred to the landlord and collected out of the crops grown on the leased premises, the landlord will be liable to the extent of the waiver, but before he can be resorted to by the person holding the deed of trust, the other securities embraced in the deed of trust must first be resorted to and exhausted.

---

*Headnotes 1. Landlord and Tenant, 36 C. J., Section 1545 (1926 Anno); 2. Landlord and Tenant, 36 C. J., Section 1545 (1926 Anno).

APPEAL from chancery court of Coahoma county.

HON. C. L. LOMAX, Chancellor.

Suit by the Delta Grocery & Cotton Company against H. & C. Newman and others. After a demurrer to bill was overruled, and a judgment for complainant, defendants appeal. Judgment reversed, demurrer sustained, and cause remanded.

*Maynard, FitzGerald & Venable,* for appellant.

ANALYSIS OF THE FACTS. As we analyze the facts, the possibly material ones are as follows: 1. The landlord waives his lien according to the usual language of waivers. 2. A merchant advances supplies to the tenant. 3. He undertakes to secure his advance by a deed of trust on the crop. 4. A tenant sub-leases part of the land. 5. The sub-tenant gives his note to the tenant for the rent he is to pay. 6. The tenant gives this note to the landlord, presumptively to be applied on his indebtedness for rent. 7. The note is paid from money derived from the sale by the sub-tenant of cotton raised by him on land which he has subleased, he paying the note in the hands of the landlord. 8. It does not appear that the subtenant owed the tenant anything on his rent. 9. It does not appear that the tenant, Collier, had any interest in the cotton sold by the sub-tenant, Mix. 10. It does not appear that the defendants had any

knowledge that the sub-tenant was paying his note from cotton raised on the land.

The appellee claims in its bill that the five hundred dollars paid to appellants in discharge of the rent note which Mix, the sub-tenant, had given to the tenant belonged to it.

## I.

Did a Quasi-contractual Duty Exist? As we understand it, a *quasi*-contractual obligation is one imposed by law irrespective of the consent of the parties to be bound, to pay a sum of money to others as belonging to them in justice and good conscience. This being true, the principles which control are equitable in their nature and the inquiry always is as to whether or not the defendant under the facts of the particular case "ought" in justice and right to pay a certain sum of money to another. It would appear that the obligation to restore benefits received from the plaintiff, which would be inequitable and unjust to retain, fall within four classes. According to Mr. Woodward in his work on "*Quasi*-Contracts," page 10, they may be classified: 1st, as "benefits conferred in mis-reliance on the existence of a right or duty;" 2d, as benefits conferred in dutiful intervention in another's affairs; 3d, benefits conferred under constraint; 4th, benefits sought to be recovered in an action for their restitution as an alternative remedy for repudiation or breach of contract or for tort.

It is apparent that the first three classes have nothing to do with the case at bar; that if the action as brought is to be here sustained, it must be by the principles of the fourth class. This proceeds on the ground that it is used as an alternative remedy for damages for the breach of a duty owed by contract; namely, that appellants promised in some way to pay this money to defendants or else on the theory that as an alternative remedy for some tort committed by defendants. The tenant, Collier, by giving a deed of trust, could not bind the

crop of the sub-tenant, Mix. *Gains* v. *Keeton,* 68 Miss. 473.

Again, while it is admitted that one who has acquired converted goods either with notice of the conversion or without paying value or even although he be an innocent purchaser for value, if the converter has not been clothed with *indicia* of ownership, is himself guilty of conversion and to the extent of the benefit derived may be called upon for restitution. *Bettis* v. *McNider,* 137 Ala. 588, 34 So. 813, 97 A. S. R., 59; *McArthur* v. *Murphy,* 74 Minn. 53, 76 N. W. 955.

Yet in the case at bar, this principle does not apply for the reason that there was no conversion of cotton by Mix and hence the defendants did not receive the proceeds of converted goods. Again, as an exception to the above rule based upon policy, one who receives money innocently and for value, is always protected for as it has been stated: ''It would be mischievous to require persons, who receive money in the way of business or in the payment of debts, to look into the authority of him from whom they receive it.'' And the bill nowhere charges that appellants had any knowledge that the five hundred dollars were the proceeds of cotton upon which appellees had any claims. *Newhall* v. *Wyatt,* 139 N. Y. 452, 36 Am. St. Rep. 712; *State Bank* v. *U. S.,* 114 U. S. 401.

We think it is clear that there was no conversion on the part of Mix when he sold the cotton, no conversion on his part of the money when he paid the five hundred dollars to appellants, and no conversion on the part of appellants in receiving the money.

The cases on conversion by sale where the purchaser was held liable include: 115 Miss. 149, 172; 112 Miss. 77; 106 Miss. 489; 61 Miss. 150. These are readily distinguishable from the case at bar. In all of these cases, the plaintiff had a lien on or some sort of interest in the property alleged to have been converted. And in each case the purchaser assisted in the conversion either with knowledge or if an innocent purchaser for value was

such without the lienholder having done anything to clothe the tenant with sufficient *indicia* of ownership to work an estoppel. In the case at bar, the plaintiff had no interest in the Mix cotton, no property right therein, and the existence of some property right of some sort or character or the existence of some lien is essential to a conversion.

## II.

It may be urged, however, that there is liability owing to some sort of agreements between the parties. Liability, if it exists at all, must exist either because the parties have agreed that such will be the case, which constitutes contract, or because the law imposes it irrespective of agreement, which would constitute a *quasi*-contractual liability.

The only contract entered into between appellee and appellants was the waiver agreement by the terms of which appellants agreed to waive the enforcement of their landlord's lien against the crop of Collier to the extent of twelve hundred dollars in favor of any one furnishing to Collier money and supplies in that amount.

It will be noted that they did not contract to guarantee the debt for the supplies, neither did they agree that they would see that the debt for the supplies would be paid, nor did they agree in any wise to guarantee or become surety or to do any other thing of an affirmative character. It is not charged that they have not kept this agreement. It is not charged that they have sought to enforce a landlord's lien on the crop of Collier.

Considering the language of the waiver, there is nothing therein, we submit, to impose any liability upon appellants other than to enforce a landlord's lien. This is all they contracted to do.

*Brewer, Brewer & McGehee,* for appellee.

The appellee predicates its cause of action on its right to have its claim for money advanced and supplies fur-

nished the tenant first satisfied out of the proceeds of the crops grown on the leased premises, before the appellant was entitled to apply any of such proceeds to the payment of the rent due it as landlord, and contends that the appellant, as landlord, after having waived the rent in favor of the claim of the appellee of one thousand and two hundreds for money advanced and supplies furnished the tenant by the appellee, had no right to retain the five hundred dollars of proceeds of said crops to the detriment of the appellee. That the waiver was executed by the appellant "in order to enable the tenant to obtain such advances of money and supplies," and this is expressly stated therein as being the purpose of the giving of the said waiver.

The money was advanced and supplies were furnished by the appellee on the faith of the waiver by the landlord of its rent in favor of any person, firm or corporation advancing money and furnishing supplies to the tenant to said amount of one thousand two hundred dollars with which to make a crop on the leased premises.

The appellee does not contend that the sub-tenant was guilty of a conversion in selling the crop if when he sold the same he discharged the lien thereon for the rent, and this suit is not predicated on that theory. So far as the appellee is advised, the said sub-tenant may not have known that the appellant, as landlord, had waived all liens, for rent or otherwise, to which it may have been entitled against the crops in favor of the supply account owing to appellee. And we do not contend that the appellant was guilty of a conversion of the said crops grown on the leased premises or any part thereof, as we do not allege that they received any portion of said crops, and we do not contend that the appellant is liable to the appellee in an action of conversion of the money that it received from the said sub-tenant, because we do not contend or allege that the appellee had any lien on the money derived from the sale of said crops, but we contend that the appellant's liability to the appellee does not depend on whether or not the sub-tenant was

guilty of conversion or whether or not the appellant was guilty of a conversion.

We contend that the liability of the appellant to the appellee is based on its contract of waiver executed and delivered to the appellee at the beginning of the year, whereby it waived all liens as landlord or otherwise against all crops grown, raised or produced by or for its tenants on the leased premises for the year 1923 in favor of the appellee to the extent of one thousand two hundred dollars, and that having received five hundred dollars of the proceeds of the said crop as a payment on its landlord's lien against the same, the appellant is liable to the appellee for said proceeds until the appellee's claim to the extent of one thousand two hundred dollars of money advanced and supplies furnished the tenant should be paid in full.

If it be true that a landlord, after inducing a merchant to furnish his tenant by waiving his lien for rent in favor of such merchant, can then receive payment of his rent out of the proceeds of the crop on which the merchant taxes his security from the tenant, and then escape liability on the waiver because of the fact that he received payment of his rent out of the proceeds of the crops instead of crops *in specie,* then such waiver would avail a merchant nothing. Because under such circumstances a landlord, seeing that the crop would be insufficient to pay both the supply merchant's account and his own lien for rent, would only need to acquiesce in the sale of the crop by the tenant and receive from the tenant the proceeds of the crop in payment of his rent, and leave the supply merchant, in whose favor he had theretofore waived his rent, without remedy in most instances. The appellant became a junior lienor as to all crops grown on the leased premises either by or for the tenant.

In *First National Bank of Dozier* v. *Farmers Bank of Luverne,* 92 So. 639, it was held that an action for money had and received is maintainable whenever one person has money in his possession which rightfully belongs to another.

138 Miss.—44.

Again it was held, in *Roy* v. *Greil,* 77 So. 64, that where a plaintiff's crop mortgage was first executed and duly recorded in 'the county where the crops were grown prior to the time defendant's agent, under a subsequent mortgage, collected the proceeds of the crop, plaintiff, in equity and good conscience, is entitled to recover the proceeds of the crop from defendant and may maintain an action for money had and received.

Again in *Barnett* v. *Warren, et al.,* 2. So. 457, it was held that where the tenants, Belser and Parker, placed the cotton which was grown on the leased premises with Lehman, Derr & Company to sell for such tenant, and thereafter gave an order on said Lehman, Derr & Company to pay to the supply merchant of the tenant, J. R. Warren & Company, five hundred dollars to be charged against the proceeds of said cotton,—the landlord, Thomas M. Barnett, was entitled to recover of the said supply merchant of the tenant a judgment for the sum of five hundred dollars in an action for money had and received. See also *Young et al.* v. *Garber*, 42 So. 867; *Merchants & Miners' National Bank* v. *Barnes,* 56 Am. St. Rep. 586; *Lawson's Executor* v. *Lawson,* 80 Am. St. Rep. 702; *Roberts* v. *Ely,* 113 N. Y. 131; *Stanton* v. *Thomas,* 35 Am. Dec. —; *Allen* v. *Mendelsohn & Company,* 93 So. 416; *Farmers Bank & Trust Co.* v. *Shut & Keihan,* 68 So. 363; *L. & N. Ry.* v. *Camody,* 82 So. 648; 2 R. C. L. 780.

We do not of course contend that the appellant, H. & C. Newman, impliedly promised to pay the account of its tenant, Collier, or in any wise guaranteed the payment of the account by executing the waiver of its landlord's lien in favor of the appellee, to whom the account was owing. But we do contend that the appellee was entitled to the crops or their proceeds as between appellee and appellant until its supply account was fully paid, and that the appellant having received five hundred dollars of the proceeds of the crops as a payment on the appellant's claim for rent, as alleged in the bill of complaint, the appellant under the law was under a duty to

pay over this money to the appellee, in view of the fact that there were not sufficient crops or proceeds left out of which the claim of the appellee could be paid, as alleged in the bill of complaint. *Chism Bros.* v. *Alcorn,* 71 Miss. 506; *Dreyfus* v. *Gage,* 84 Miss. 220.

In Ann. Cas. 1918-D 241 and note, and L. R. A. 1916-D 1039, we find the well-settled principle which we are contending for in the case at bar again clearly announced.

*Maynard, FitzGerald & Venable,* in reply, for appellant.

The argument of appellee proceeds on the theory, as we gather it, that appellants, H. & C. Newman, when they subordinated their lien to the deed of trust of the Delta Grocery & Cotton Company, assumed the attitude of junior mortgagees and therefore when they received the five hundred dollars they became liable to the senior mortgagees and in support of this analogy there are several cases cited from Alabama, to which might be added the case from our own courts, *Witczinski, et al.,* v. *Everman, et al.,* 51 Miss. 841.

An examination of all of these cases will reveal that without exception they proceed on one of two theories, both of which are undoubtedly sound but neither of which is applicable to the case at bar. Of course, it is common learning that trover or conversion consists in the unjustifiable interference with the property of another to that other's rightful dominion over it, and where a junior mortgagee takes the property and so deals with it as to in effect place it beyond the reach of the senior mortgagee for the satisfaction of the indebtedness to him, this is an unjustifiable interference with the rights of property of the senior mortgagee and, it is held, constitutes, under proper circumstances, trover or conversion, and this form of action will lie.

It is true, as illustrated by the Witezinski case, that where one knows that property is subject to a trust and it comes into his possession, equity will lay hold upon

his conscience and require of him that he deal with the property as good faith and right dealings demand, and will hold him trustee of the property or its proceeds, if he should change its form.

Both doctrines alike rest upon the assumption that there has been an unjustified and unlawful interference with the property of another and a conversion of it from the use intended by its owner, contrary to his will and dominion over it. So it is apparent that both doctrines proceed on the assumption that there has been some such violation of rights.

Here there has been nothing done by appellant which interferes with any property against which appellee had any claim or right of dominion. Appellee states in its brief that it does not claim that there was a conversion of any property belonging to appellee.

We do not conceive how a situation could be created where we are under an equitable obligation to pay the money to them unless we agreed to do so, and when we turn to what we agreed to do, we find that we simply stated that we would not seek to enforce any landlord's lien against any property upon which they should take a security. And we have kept this promise to the letter.

ETHRIDGE, J., delivered the opinion of the court.

Appellee filed a bill in the chancery court against the appellant, a corporation, who owned a plantation in Coahoma county, Miss., which it is alleged had been leased for a period of three years to one Arthur Collier, at and for the sum of two thousand dollars per annum rent; that it had become necessary for the appellant to waive its lien in favor of some one who would furnish Collier for the purpose of making a crop and that appellant on the 26th day of February, 1923, signed a waiver of its lien to the extent of one thousand two hundred dollars for the year 1923 in order to enable the said Collier to obtain money and supplies, and that such waiver was signed and delivered by the appellant; that on the

28th day of February, 1923, the appellee took a deed of trust on the crops grown by or for Collier on the said leased premises to secure two notes of six hundred dollars each, said deed of trust being on "all the crops of cotton, cotton seed, corn, and all other agricultural products planted and now being grown, and all such crops as may be planted and grown during the year 1923 on that land in said county" (describing the land) "and now being occupied, cultivated, or rented by the parties of the first part" (Collier and wife), "and on any and all other land now being rented or cultivated by the said party of the first part or which may be cultivated or rented by the said parties of the first part during the year 1923 in the county aforesaid; together with all rights, liens, and claims to and on said crops they may at any time have," etc.

The deed of trust also covered all farming implements of every kind and description, wagons, and live stock now in the possession of the parties of the first part, describing certain specific live stock therein. The notes and deed of trust matured as follows: The first note for six hundred dollars on October 1, 1923; and the second note for six hundred dollars matured on November 1, 1923.

It is further alleged that the complainant did advance to Collier the sum of one thousand two hundred dollars during the said year 1923 and money and supplies, etc., for use on said land and for making said crop, and that said deed of trust constituted a first lien on all crops grown on the said land during the said year to the extent of one thousand two hundred dollars. The bill then alleged on information and belief, that said Arthur Collier as tenant of the defendant during the year 1923 subrented the land or a part of it to one Will Mix at and for the sum of five hundred dollars taking a promissory note of the said Will Mix for the said amount, and that he thereafter delivered the said note to the said defendant.

"The complainant is further advised that the said promissory note of five hundred dollars has been paid to

the defendant out of the proceeds of cotton grown upon said lands during the year 1923, and on which this complainant then held a prior lien by virtue of its said trust deed and the written waiver of the defendant hereinbefore mentioned.'' It is further alleged that, unless the defendant is compelled to respond to the complainant in the sum of five hundred dollars collected by it from the sale of the crops grown on said lands, that it will be unable to enforce the collection of unpaid account for money advanced and supplies furnished to the said Collier during the year 1923 amounting to one thousand two hundred dollars, as it will require the said sum of five hundred dollars and the proceeds of the sale of all other property covered by its said trust deed to fully satisfy the said indebtedness, if in fact the said sum of five hundred dollars and all other property shall be sufficient at all for said purpose. It was then alleged that the defendant is indebted to the complainant in the sum of five hundred dollars which the defendant had refused to pay and prayed for an attachment against the plantation and property of the defendant in Coahoma county, Miss., the defendant being a nonresident corporation of New Orleans, La., and for process, and prays upon final hearing for a decree ordering the sale of the said lands as may be necessary for the satisfaction of said indebtedness, and for general relief.

The bill was filed on the 17th day of October, 1923. Process was returnable to the chancery court of Coahoma county on the third Monday of November, 1923. The bill was demurred to by the defendant upon the ground: first that the bill did not state a cause of action; second, that the bill proceeds on the theory that defendant has converted certain property in which complainant had an interest, whereas, the facts show, as set out in the bill, that he had no right, title or interest in and to the five hundred dollars paid by Will Mix to defendants, if such payment was made; third, that the bill does not show that defendant had any knowledge from what source the

five hundred dollars charged to have been paid by Will Mix was derived; fourth, the bill does not show that the complainant, Delta Grocery & Cotton Company, had any claim or lien on cotton raised by Will Mix, or that the cotton which was sold was in any wise subject to the deed of trust. The demurrer was overruled and an appeal granted to settle the principles of the case.

It will be noted from the statement of facts that the bill was filed before the maturity of the second note, and that the bill fails to allege that complainant had resorted to the other cotton grown upon the leased premises, if any, and it was not stated that there was not other cotton grown hereon, nor how much agricultural products remained on the place in the hands or under the control of Collier, and does not show that the personal property embraced in the deed of trust was resorted to, and if it was resorted to, how much it brought, nor how much of the five hundred dollars, if any, would be required after exhausting all of the other property of the main tenant Collier, under the deed of trust.

We think under the allegations of the bill and the exhibits that complainant had an equitable assignment of the note that Mix gave Collier, and that it had a prior lien to the extent of one thousand two hundred dollars on all products grown by or for Collier on the said place. The clause in the deed of trust, "together with all rights, liens, and claims to and on said crops they may at any time have," was sufficient to convey to the complainant Collier's lien upon the crops of Mix for the five hundred dollars rent, and that as the rent was on the place leased by the defendant to Collier, which it waived in favor of the complainant to the extent of one thousand, two hundred dollars would give complainant a right to prior satisfaction, but before it could resort to suit against the appellant it must first resort to the crops grown by Collier on the premises and to the other property conveyed in the deed of trust. It must apply the first moneys received to the liquidation of the one thousand two hundred dollars authorized by the waiver. As stated the

bill does not show that complainant had exhausted its recourse to Collier's crop and Collier's property conveyed in the deed of trust, before resorting to suit against the appellant. We think, therefore, that the bill was prematurely filed; that it did not state the necessary facts to show its right of action against the defendant; and that the demurrer should have been sustained.

The judgment will, therefore, be reversed, and the demurrer sustained, and the cause remanded with leave to the complainant to file an amended bill or to amend its bill, so as to conform to the views herein expressed.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

(Division B.   May 11, 1925.)

[104 So. 157.]

CHATTEL MORTGAGES. *Notes of subtenant, if at time owned by tenants, held covered by their mortgage of crops.*

   Quoted words of deed of trust by tenants, covering crops that may be grown on the land, "together with all rights, liens, and claims to and on said crops they may at any time have," *held* to have the effect of an equitable assignment of notes of a subtenant for rent, provided the tenants then owned them.

---

*Headnote 1. Chattel Mortgages, 11 C. J., Section 176 (1926 Anno).

On suggestion of error.   Overruled.

ETHRIDGE, J.

In the deed of trust given by Collier and wife to the Delta Grocery & Cotton Company it was provided that such deed of trust should cover all the crops of cotton, cotton seed, corn, and all other agricultural products planted and then being grown, and all such crops as may be planted and grown during the year 1923 on the lands described therein, "together with all rights, liens, and claims to and on said crops they may at any time have." We hold that the provision quoted above had the effect

of an equitable assignment by Collier and wife to the
Delta Grocery & Cotton Company of the notes of the
subtenant, Mix, provided Collier owned the said notes
at the time of the giving of the deed of trust, and it was
not intended in' the original opinion to decide whether
he then owned such notes or not. If he did not own the
notes at such time, and did not hold a lien against the
crops of Mix at such time or thereafter, of course the title
to the Mix notes ·would not pass by the deed of trust.
The bill is a little indefinite about whether Collier then
owned the Mix notes or not, but we think that, consider-
ing the entire pleadings and exhibits, the inference to
be drawn therefrom is that he did own the Mix notes, and
by the deed of trust conveyed it at least in equity.

As we held the suit prematurely brought and dismissed
the bill, this matter can be presented whenever a new
bill is filed. The suggestion of error is therefore over-
ruled.

*Overruled.*