LIBERTY CENTRAL TRUST CO. OF ST. LOUIS, MO., *v.* SENTON.[*]

(Division B.    May 25, 1925.)

[104 So. 157.    No. 24928½]

1. CARRIERS.    *Bank held not purchaser of order bill of lading with attached draft for price, relative to right of buyer of goods to attach proceeds of draft.*

One of the banks through which there was forwarded for collection a draft, drawn by seller of cotton on buyer for price, attached to order bill of lading, though giving its forwarding correspondent a credit for the amount of the draft, to be charged back, however, to such correspondent if draft was not paid, was not a bona-fide purchaser for value of the bill, within federal Uniform Bills of Lading Act (U. S. Comp., sections 8604aaa-8604w), so as to prevent proceeds of draft, after its payment by buyer of cotton, being attached by him on rescinding for defect in quality of cotton.

2. CARRIERS.    *Status and rights of parties unaffected by collecting bank's indorsement on draft of no guaranty of goods.*

The *status* and rights of the parties in interest could not be changed by a bank through which there was forwarded for collection a draft for price of goods, attached to order bill of lading, indorsing on draft that such bank does not guarantee quality of goods covered by bill of lading.

---

[*]Headnotes 1. Carriers, 10 C. J., section 278 (1926 Anno); 2. Carriers, 10 C. J., section 278 (1926 Anno).

APPEAL from chancery court of Jones county.

HON. GEO. C. TANN, Chancellor.

Action by F. S. Senton against the Liberty Central Trust Company of St. Louis, Mo., and others. From de-

cree for plaintiff, the named defendant appeals. Affirmed.

*Deavours & Hilbun,* for appellant.

It appears from the record, we think, without dispute, that the shipment out of which this suit arose was an interstate shipment; that the Bill of Lading was a Standard Shipper's Order Notify Bill of Lading and was attached to the draft; that appellant in the usual course of business, purchased said draft and bill of lading without any notice of any alleged defects therein or of any controversy among the parties; that it further endorsed on said draft, as set out in full in the statement of facts, that it did not guarantee quantity, quality or delivery of the shipment in question.

We submit that the doctrine of *Searles Bros.* v. *Grain Company,* 80 Miss. 688, 32 So. 287, and the subsequent decisions of this court following that case, is not at all applicable here. The shipment of cotton in this case was in interstate commerce and under the Federal Uniform Bill of Lading Act of Congress of 1916, chapter 415, sections 8604aaa to 8604w, U. S. Comp. Stats. 1916, the appellant is not a co-warrantor in any sense of the shipper.

Since the passage of the said Uniform Bill of Lading Act of Congress, our court has refused to longer follow the doctrine announced in the Searles case and subsequent cases of like character. In the well-considered case of *First National Bank of Ripley, Tennessee,* v. *Tchula Commercial Co. et al.,* 95 So. 742, this court, through Justice HOLDEN, has definitely settled this question adversely to the contention of appellee.

This case now before the court for decision is even a stronger case in favor of appellant than that of *First National Bank* v. *Tchula Commercial Co., et al.* Appellant here before sending the draft for collection endorsed thereon that "The bank hereby notifies all parties con-

cerned that it does not guarantee quantity, quality or delivery of goods covered by the bill of lading.''

This endorsement was on the draft at the time it was presented to the appellee for payment. It could have been seen by him if he had made the most casual examination or inspection thereof. It is true that he testified that he did not actually see this endorsement, as he did not examine the draft when presented to him by the bank for payment. While it appears that he did not have actual notice of this endorsement, yet, undoubtedly he had constructive notice thereof, and, in our opinion, he is forever estopped, by accepting and paying said draft with the endorsement thereon, from asserting any claim to the proceeds thereof or in contending that the appellant is a co-warrantor with the shipper of the cotton.

We, therefore, respectfully submit that the record shows beyond question that the appellant was an innocent purchaser of the draft and the bill of lading in question; that the court erred in not so holding that in ordering the said proceeds paid to the appellee instead of to this appellant; that the decree of the court below should be reversed and a judgment entered in this court in favor of appellant sustaining its cross-bill and ordering the clerk of the court to pay to appellant the proceeds of this said draft and bill of lading amounting to three thousand three hundred forty-seven dollars and thirty-five cents.

*W.. S. Welch* and *Ellis B. Cooper,* for appellee.

This case was tried in the full light of the decision by this court in *Bank* v. *Tchula Co.,* 95 So. 742. We do not deny that the transaction was in interstate commerce. We say, however, that the rule announced in the *Tchula case, supra,* does not apply because the record shows, and the court below so held, that appellant was not an innocent purchaser for value without notice. We say, too, that the record fails to show any indorsement of the bill of lading and that such indorsement under the Fed-

March, 1925] Liberty Cent. Trust Co. v. Senton. 853

139 Miss.]                    Brief for Appellee.

eral Bill of Lading Act is a vital requirement. We say that the indorsement of not warranting is not binding upon appellee as he had no notice of it and that it was ineffectual because of a lack of notice; and it was ineffectual because not signed.

The court will have observed that the one outstanding issue was as to whether appellant was an innocent purchaser for value. The pleadings make this issue and the evidence is directed toward it. The only question bearing on this question comes from the appellant. Same was elicited on interrogatories propounded under section 1598, Hemingway's Code, section 1938, Code 1906.

This shows that the draft in question reached appellant on February 12, 1924. It shows that it was only one of forty-three items sent on that day. It shows that with it there was a total of six thousand four hundred one dollars and forty-one cents. The letter of remittal specifically directs the return of all unpaid items. The remittance was the usual remittance. This draft was handled in no other way than the first item of one dollar or the last item of thirteen dollars and eighty-one cents.

Appellant says under the facts, that it is an innocent purchaser for value of the draft and bill of lading. We respectfully submit that it is not. See *Thompson* v. *Sioux Falls Bank,* 37 L. Ed. 1063, 150 U. S., 231; *Bank* v. *Smith,* 95 So. 785.

Appellant is domiciled in Missouri, and the supreme court of that state ruled on this in *Midwest National Bank & Trust Co.* v. *Parker Corn Co.,* 245 S. W. 217. See, also, *Midland Nat'l Bank* v. *Brightwell,* 148 Mo. 358, 49 S. W. 994, 71 A. S. R. 608; *Bank* v. *Morgan,* 207 Ala. 65, 92 So. 10.

These authorities clearly show that under the law of the United States the law governing under the "Uniform Bill of Lading Act," under the law of Missouri where the transfer was had between the First National Bank and appellant, and the law of Mississippi, where the draft was presented for payment, appellant cannot be classed as a purchaser for value of either the bill or

854    Liberty Cent. Trust Co. *v.* Senton. [Sup. Ct.

Brief for Appellee.    [139 Miss,

the draft. The supreme court of the United States holds distinctly in the case cited that where credit is given and facts are discovered before the amount of the credit is withdrawn that the bank is not a purchaser for value without notice. In other words, it is not an innocent purchaser.

The rule stated above is the prevailing rule in almost every jurisdiction. It is carried in principle into the Uniform Neg. Inst. Law, section 2632, Hemingway's Code. See in particular, *Nat'l Bank* v. *Morgan,* 207 Ala. 65, 92 So. 10. If appellant was not an innocent purchaser of the draft, it certainly was not an innocent purchaser of the bill of lading. *Shaw* v. *Bank,* 101 U. S. 557, 25 L. Ed. 892.

The Uniform Bill of Lading Act, while it makes an order bill negotiable by indorsement and delivery just as in the Shaw case, still this negotiability does not rise to the same height as in the case of checks, drafts, notes, etc. If, therefore, appellant was not under the law of the United States an innocent holder for value of the draft it is not an innocent holder of the bill of lading, assuming it has been indorsed and delivered. See *Bank* v. *Tchula Co.,* 95 So. 742.

That the Uniform Bill of Lading Act is insistent upon the purchaser being a purchaser in good faith for value is apparent in every section of the act dealing with the subject. Sections 11, 12, 22, 23, 31. A purchaser in good faith for value of an order bill which has been duly negotiated is freed of equities. But where there is a lack of good faith or a lack of value in the purchase, such condition does not obtain. We say, therefore, that accepting the rule in the Tchula case, the appellant is not that innocent holder or assignee which that case requires and it never has been.

It is next argued that the notice on the back of the draft to the following effect: ''This bank hereby notifies all parties concerned that it does not guarantee quantity, quality or delivery of goods covered by the bill of lading,'' enters into the case.

In the first place, the record is clear and without dispute that the appellee never knew of the existence of this indorsement until long after its payment. Appellant admits that there was no actual knowledge of this indorsement.

It is said that there was constructive knowledge but appellant cites no authorities showing constructive knowledge. Constructively, appellee might be charged with the indorsement of those through whose hands the document passed. But this is no such indorsement. It is not germane to the instrument. We submit that there is no more constructive knowledge of this indorsement than there would be constructive knowledge of a song that might have been written on the back of the draft which the appellee did not see. So on this count, this indorsement can cut no figure in the case.

But for the sake of argument, let us assume that knowledge is conclusively presumed. The indorsement is not signed by appellant. It is signed by no one. No one knew who fathered this indorsement until appellant filed its answer and cross-bill. It might have been the indorsement of the First National Bank of Laurel, Mississippi. It might have been the indorsement of the Tulsa bank or the Cushing bank.

Assuming for argument's safe a constructive knowledge of the indorsement, will this court impute to appellee a knowledge of something not on there, viz: the name of the bank or indorsee that put it there? We submit that it will not. It is contrary to common sense.

But there is still another answer to the argument. We are not suing the appellant as a co-warrantor. We are not attempting anything like that. The appellant says that it is a purchaser for value in good faith and for that reason it is freed of the claim that appellee might have because of the outrageous quality of this cotton.

We are saying that it is not a purchaser for value in good faith and that not being so it is charged with these equities just as the purchaser of a note who did not pay value for it or who did not purchase in good faith would

be answerable to the equities between the original parties.

The only effect of the indorsement would be to defeat the co-warranty even if effectual. If A sell B an article and receive a note for the purchase price, and there develops a total failure of consideration or there is a breach of warranty, C who obtained the note without paying value or in bad faith, would certainly in a suit on the note be answerable to the equities between A and B.

So in the instant case, appellant is not a purchaser in good faith for value. The lower court so decreed and that has been settled as any issue of fact would be. So we respectfully submit that for these reasons there is nothing in the argument as to the effect of the indorsement.

Argued orally by *Henry Hilbun,* for appellant, and *Ellis B. Cooper,* for appellee.

ANDERSON J., delivered the opinion of the court.

This was a foreign attachment begun by appellee, F. S. Senton, in the chancery court of Jones county, against Randolph Scott Company and Randolph Scott of Memphis, Tenn., R. C. Jones Cotton Company, a corporation of Cushing Okla., the Oklahoma National Bank of Cushing, Okla., and appellant, Liberty Central Trust Company of St. Louis, Mo., and First National Bank of Laurel in this state, by which appellee sought to recover back from the defendants Randolph Scott Company and Randolph Scott and R. C. Jones Cotton Company the sum of three thousand three hundred and forty-seven dollars and thirty-five cents the purchase price of twenty-five bales of cotton appellee had theretofore bought from said defendants, draft for which amount had been drawn by the defendant R. C. Jones Cotton Company, on appellee, with bill of lading attached, and paid by appellee to the defendant First National Bank of Laurel; the latter bank having been made a defendant in the nature of a garnishee for the purpose of holding the proceeds of said draft to satisfy the judgment of the court. There was a

trial on the pleadings and proofs, and final decree rendered in appellee's favor for the amount sued for against the defendants Randolph Scott Company and Randolph Scott and R. C. Jones Cotton Company, decreeing that the defendant the First National Bank of Laurel pay over to appellee the proceeds of said draft to satisfy the decree. The proceeds of the draft were claimed by appellant, Liberty Central Trust Company alone. The other defendants in the cause do not appeal.

The bill of lading for the cotton was a shipper's order notify bill, and the draft in question was thereto attached. The shipment of the cotton was an interstate shipment. Appellant claims it is entitled to whatever rights are given it under the federal Uniform Bills of Lading Act, chapter 415, 39 Stat. L. 538, F'ed Statutes Ann. (2d Ed.), Supp. 1918, pp. 72-82 (U. S. Comp. St., sections 8604aaa-8604w). Appellant relies on the protection given by the statute to a *bona-fide* purchaser for value without notice of such a bill of lading.

The controlling facts out of which the question arises are, in substance, as follows: In February, 1924, appellee purchased from Randolph Scott Company of Memphis, Tenn., one of the defendants in the court below, and a cotton brokerage concern, "twenty-five bales of first-class loose, an inch to an inch and one-sixteenth." That meant twenty-five bales of repacked cotton made up of loose cotton pulled out of bales for the purpose of samples. The grade was not to be under strict low middling. Randolph Scott Company purchased the cotton for appellee from the defendants R. C. Jones Cotton Company of Cushing, Okla. The latter shipped the cotton from Cushing, Okla., to appellee at Laurel, in this state, drawing a draft on appellee for the purchase price thereof, with bill of lading attached. The draft was payable to the Oklahoma National Bank of Cushing, Okla., one of the defendants in the court below, which forwarded the same to its correspondent, the First National Bank of Tulsa, Okla., another defendant in the court below, and that bank in turn forwarded the draft and bill of lading

to appellant, Liberty Trust Company of St. Louis, Mo. The latter bank, in turn, forwarded the draft and bill for collection to the first National Bank of Laurel, defendant in the court below. The latter bank duly presented them to appellee, who paid the draft and took up the draft and bill of lading and received the cotton. Upon an examination of the cotton, appellee found that it did not come up to the class and grade purchased by him, and thereupon notified the seller that the contract was rescinded. The proceeds of the draft were still in the First National Bank of Laurel, and thereupon appellee sued out the attachment in this cause, naming as defendants the banks and cotton concerns above named, including the appellant.

Appellant contends that when the draft was received by it, an absolute and immediate credit was thereupon given the First National Bank of Tulsa, Okla., its correspondent from whom the draft was received, for the face value of the draft, three thousand three hundred forty-seven dollars and thirty-five cents; that it became and was a *bona-fide* purchaser for value of the draft and bill, and therefore was protected from any infirmity in them which existed as between appellee and Randolph Scott Company, Randolph Scott, or R. C. Jones Cotton Company.

Appellant's cashier, Kingsbury, did testify that when the draft and bill reached his bank from its correspondent, First National Bank of Tulsa, the former purchased the same and credited the latter with the proceeds thereof. That statement, taken alone, would probably constitute appellant a *bona-fide* holder for value of the draft and bill, but the other evidence in the case furnished by appellant through its cashier, Kingsbury, as well as answers to interrogatories propounded by appellee to appellant under our statute authorizing that to be done, we think, shows without real conflict that appellant was not a *bona-fide* purchaser for value, but handled the draft and bill as one of several correspondent banks for the

purpose alone of collection. Part of the evidence furnished by appellant was the correspondence passing between appellant and First National Bank of Tulsa touching the draft and bill. This correspondence shows that the draft and bill reached appellant February 12, 1924, with forty-two other "items." The letter accompanying the draft and bill of lading was dated February 12, 1924, addressed to appellant and signed by the First National Bank of Tulsa, which, in substance, stated that the "items" were remitted for credit. Quoting from the letter further:

"Protest and return if not paid all cash items over twenty dollars, wiring nonpayment of all items over five hundred dollars unless otherwise instructed."

It will be seen that the forwarding bank in this letter directed appellant to return all unpaid items. Appellant duly acknowledged the receipt of the items, including the draft and bill here in question, from the forwarding bank, in which it stated:

"Outside items are credited subject to final payment and are handled at your risk, we assuming no responsibility other than due diligence."

Appellant's cashier, Kingsbury, testified that "outside items" meant drafts drawn on points outside of the city of St. Louis, where appellant was located. The draft here, of course, was drawn on such a point—Laurel, Miss. Appellant's letter of acknowledgment contained the following notice to the forwarding bank:

"Items received for collection or credit, and not drawn on this bank, are taken at depositor's risk, and should anything be lost or should no returns be received within a reasonable time, such items may be charged back to depositor."

Appellant's cashier further testified that each day since February 13, 1924, appellant's forwarding bank, First National Bank of Tulsa, had to its credit with appellant a sum larger than the amount of the draft involved. This evidence was given in October, 1924, and the bill in this case was filed February 23, 1924.

The simple question is whether, under the facts of this case, appellant was in truth and in fact a purchaser in good faith for value of the draft and bill involved in this cause. If it was, it comes within the protection of section 31 of the Federal Uniform Bills of Lading Act. That section provides, in substance, that a person to whom a bill has been negotiated acquires such title to the goods as the person negotiating the bill to him had or had ability to convey to a purchaser *in good faith for value,* and also such title to the goods as the consignee and consignor had or had power to convey to a *purchaser in good faith for value.* (Italics ours.)

All defenses for the consignee against the consignor of the cotton would be cut off as to appellant, provided appellant comes within the statute. On the other hand, of course, if appellant was not a purchaser in good faith for value, but handled the draft and bill as a mere collection agency, appellee can make any defenses against appellant which it had against the seller and consignor of the cotton.

The correspondence between appellant and the forwarding bank, the First National Bank of Tulsa, as set out above, taken alone, would demonstrate, it seems, that appellant handled the draft and bill, not as a purchaser for value in good faith, but for collection alone for one of its correspondents. It is true appellant gave its forwarding correspondent, First National Bank of Tulsa, credit for the amount of the draft. But the correspondence shows that it was not an absolute credit—it was only a provisional credit. It was a credit which was to be charged back to its forwarding correspondent if the draft was not paid. The evidence of appellant's cashier, Kingsbury, as we view it, does not contradict these facts. It is true he says that appellant gave the First National Bank of Tulsa credit and purchased the draft and bill, but he goes on further in his evidence and shows what he meant. He refers to the correspondence between appellant and First National Bank of Tulsa as stating the

facts. That correspondence is exhibited as part of the evidence upon which appellant relied to establish the fact that it had purchased the draft and bill instead of taking it for collection. As we view it, there is no real conflict in the evidence on this issue of fact. It shows beyond question that appellant in the handling of the draft and bill only acted as one of the collecting agencies by means of which the drawer of the draft undertook to collect the purchase money of the cotton.

Appellant refers with confidence, as sustaining its position, to *First Nat. Bank of Ripley* v. *Tchula Commercial Co.*, 132 Miss. 58, 95 So. 742. The radical difference between that case and this is the forwarding bank in that case, as shown by the agreed facts upon which the cause was tried, was a *bona-fide* purchaser for value of the draft and bill.

Appellant stresses the fact that before forwarding the draft and bill of lading to the First National Bank of Laurel, where appellee paid it, there was indorsed by it on the back of the draft this statement: "This bank does not guarantee quality, quantity, or delivery of goods covered by bill of lading."

Appellant could not change the *status* and rights of the parties in interest by such an indorsement on the draft. Their rights were fixed by law as applied to the then facts. Such an indorsement by appellant, who handled the draft and bill of lading, not as a purchaser in good faith for value but as a mere agency, for collection, was without authority of law. Such an indorsement was beyond the scope of its agency.

*Affirmed.*