H. & C. NEWMAN, INC., *v.* DELTA GROCERY & COTTON CO.*

(In Banc. Dec. 6, 1926. Suggestion of Error Overruled Jan. 10, 1927.)

[110 So. 686.  No. 25841.]

1. LANDLORD AND TENANT. *Against one advancing money to tenant, on landlord waiving lien on crops, landlord held estopped to contend tenant had no interest in subtenant's crop.*

Defendant, by waiver of all liens on crops raised by or for C. on lands rented to him by defendant, having induced plaintiff to extend credit to C., and led plaintiff to believe that he would acquire a valid deed of trust paramount to defendant's lien on all of C.'s interest in crops by whomsoever produced on such lands, was estopped to contend that, by C.'s deed of trust to plaintiff, plaintiff acquired no lien on the crop raised by C.'s subtenant, because of C.'s prior assignment to defendant, unknown to plaintiff, of subtenant's rent note.

2. MONEY RECEIVED. *On defendant receiving money by right belonging to plaintiff, plaintiff may recover it as money had and received.*

Where defendant received payment of note with proceeds of crop, which, by reason of mortgage of insolvent and estoppel of defendant, by right belonged to plaintiff, plaintiff could recover the money of defendant as money had and received; the law implying defendant's promise to pay it to plaintiff.

3. APPEAL AND ERROR. *Statement of appellate court, in case before it on pleadings, on question not presented by pleadings, held not law of case.*

Where case was before appellate court on the pleadings alone, its statement on a question not presented by the pleadings, and so not involved in the case, was dictum, does not constitute law of the case.

ETHRIDGE, J., dissenting.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., p. 1104, n. 41; Landlord and Tenant, 36 C. J., p. 484, n. 80 New; Money Received, 41 C. J., p. 39, n. 55; p. 40, n. 58.

APPEAL from chancery court of Coahoma county. HON. C. L. LOMAX, Chancellor.

Suit by the Delta Grocery & Cotton Company against H. & C. Newman, Inc. Decree for plaintiff, and defendant appeals. Affirmed.

*Maynard, Fitzgerald & Venable,* for appellant.

Collier by giving a deed of trust could not bind the crop of Mix, the sub-tenant. For a discussion of this see brief on former decision in this case. It seems to us to be elementary, and this the court has set forth in its opinion on demurrer, that the complainants in the

court below in order to recover must show some sort of right to the note of Mix. The facts constituting this right they must plead. Being required to plead, they must bear the burden of proof.

The waiver executed by H. & C. Newman does not mention the note, but simply waives all liens that H. & C. Newman may have on any cotton raised on the leased premises. H. & C. Newman have never undertaken to enforce any liens on any cotton. The Delta Grocery & Cotton Company, through their deed of trust, took no liens on the cotton of Mix.

The burden of proof was on complainant to prove that the Mix note was in the possession of Collier at the time the deed of trust was executed and at the time the waiver was executed.

The complainant has not met this burden. In fact, the note was in the possession and ownership of H. & C. Newman, prior either to the execution of the waiver or the deed of trust.

As we see it, the proof is all one way and indeed it was admitted in the court below on the trial, and as we have said, the decision of the chancellor grew out of a misapprehension of the meaning of the court, the chancellor not having the response to the suggestion of error before him on the trial.

*Brewer & Brewer,* for appellee.

We are not contending that the appellant is liable to the appellee in an action of conversion, or on any other ground except in an action for money had and received which in equity and good conscience belonged to the appellee.

Since the case was before this court on the former appeal, the facts developed at the trial in the court below show that at the time the waiver was executed by the appellant in favor of the appellee, for the purpose of inducing appellee to supply the said Arthur Collier, the

rent note, on which the five hundred dollars in question was paid, had at that time already been transferred and assigned to the appellant. Hence, it further develops that at the time the said Arthur Collier executed his trust deed in favor of the appellee on all crops of cotton grown, raised or produced by or for him on the lands in question, his landlord's lien against his sub-tenant for said five hundred dollars had already been assigned to the appellant, and the appellant withheld this knowledge from the appellee at the time the appellant executed and delivered the waiver of its lien in favor of the appellee for the purpose of inducing the appellee to advance the said Arthur Collier money and supplies during said year. In this connection see *Dreyfus* v. *Gage,* 84 Miss. 22; *Chism* v. *Alcorn,* 71 Miss. 506.

We are not here suing the appellant to make it pay the account owing by Arthur Collier to the appellee, as was sought to be done in the last case cited, but we have brought our action for money had and received by the appellant which in equity and good conscience belonged to the appellee.

That an action for money had and received may be maintained in the absence of privity of contract, there can be no doubt. *Moses* v. *McFerlin,* 2 Burr. (Eng.) 1005; *State* v. *Johnsburg,* 59 Vt. 337, 10 Atl. 531; *R. R. Co.* v. *Burke,* 102 Va. 643, 47 S. E. 824; *Roberts* v. *Ely,* 113 N. Y. 131; *Allen* v. *Mendelsohn & Co.,* 93 So. 416; Farmers *Bank & Trust Co.* v. *Shut & Keihan,* 68 So. 363.

The decree of the lower court should be affirmed.

ANDERSON, J., delivered the opinion of the court.

The appellee, Delta Grocery & Cotton Company, a corporation under the laws of this state, filed its bill in the chancery court of Coahoma county against the appellant, H. & C. Newman, a corporation under the laws of the state of Louisiana, to recover the sum of five hundred dollars with interest. There was a trial on the pleadings

and proofs resulting in a decree in favor of the appellee for the amount sued for, with interest. From that decree, appellant prosecutes this appeal.

This is the second appearance of this case in this court. The report of the case on the former appeal will be found in 138 Miss. 683, 696, 103 So. 373, and 104 So. 157. The first appeal was prosecuted to settle the principles of the cause. On that appeal there was an original opinion of the court, followed by an opinion in response to a suggestion of error. The following is deemed a sufficient statement of the case as is now before the court:

The appellant owned two tracts of farm land in Coahoma county, one known as the Ward-Lake place, and the other as the Hendrick's place. The appellant leased both of these places to Arthur Collier for the years 1923 to 1925, inclusive, for the rent of which Collier agreed to pay the appellant the sum of two thousand dollars per year, due and payable November 1st of each of said years, and gave his three notes to appellant accordingly. After leasing the land from appellant, Arthur Collier subleased the Ward-Lake place to Will Mix for the year 1923 for the sum of five hundred dollars, for which sum Mix gave his note to Collier, payable on November 1, 1923. Mix's note was dated February 21, 1923. Collier thereupon delivered the note of Mix to appellant, with this indorsement below Mix's signature to the note, which indorsement was signed by Collier: "For rent Ward-Lake place per contract of which this is a part." Collier was unable to supply his tenants on these lands for the year 1923 to enable them to cultivate the lands. This fact was brought to the knowledge of the appellant, and, in order to induce appellee to furnish Collier the necessary supplies for that purpose, appellant executed and delivered to appellee a written waiver in the following language:

"Know all men by these presents that whereas, heretofore, to-wit, on the 6th day of November, 1922, H. & C. Newman, Inc. (a corporation chartered and existing

under the laws of the state of Louisiana), leased and demised to Arthur Collier, of Farrell, Miss., certain land belonging to the said H. & C. Newman, Inc., situated in Coahoma county, Miss., known as the Ward Lake place and the Hendrick's home place, particularly described in a lease agreement dated the said 6th day of November, 1922, executed by the said H. & C. Newman, Inc., and the said Arthur Collier, to which reference is hereby made for full particulars; and whereas, the said Arthur Collier desires to obtain advances of money and supplies with which to make a crop on said land during the year 1923: Now, therefore, in order to enable the said Arthur Collier to obtain such advances of money and supplies, in the amount of not exceeding twelve hundred dollars ($1,200), during the year 1923, the said H. & C. Newman, Inc., hereby waives, to the extent of twelve hundred dollars ($1,200), but no further, in favor of any person, firm or corporation furnishing to the said Arthur Collier, during the said year 1923, for use on the lands aforesaid, money or supplies not exceeding in the aggregate the sum of twelve hundred dollars ($1,200), all liens as landlord or otherwise to which the said H. & C. Newman, Inc., may be entitled, on any and all crops grown, raised, or produced by or for the said Arthur Collier on the lands aforesaid during the said year 1923. It is distinctly understood and agreed, however, that except as to the sum of twelve hundred dollars ($1,200) in money or supplies to be furnished the said Arthur Collier, as aforesaid, for use on the lands aforesaid, during the year 1923, as aforesaid, said H. & C. Newman, Inc., hereby reserves, retains, and does not in any manner waive, release, or subordinate any and all rights, remedies, liens, and privileges to which it is or may be entitled, as landlord or otherwise, on or against any and all crops grown or produced on said lands during said year 1923. In testimony whereof this instrument has been executed on behalf of said H. & C. Newman, Inc.,

by Paul Kling, its secretary-treasurer, on this the 26th day of February, 1923.''

Before the delivery of the waiver by appellant to appellee, the five hundred dollar rent note of Mix had been delivered by Collier to appellant, but this was unknown to appellee; and, after the execution and delivery of the waiver by appellant to appellee, Collier excuted a deed of trust in favor of appellee which conveyed.all the crops to be grown by Collier and his tenants on both tracts of land during the year 1923, and, in addition (quoting from deed of trust), ''all rights, liens, and claims to and on said crops that he may at any time have.'' There was further conveyed by the deed of trust, as security for the supplies to be advanced by appellee, certain farm implements and live stock. After exhausting all the securities covered by its deed of trust, including the crops therein conveyed, appellee lacked more than the amount sued for in this case of realizing the sum of $1,-200 out of such crops.

Appellant contends that, so far as the crops of the subtenant were concerned, Collier's deed of trust to appellee conveyed nothing, because at the time of the execution of the deed of trust Collier had no interest in the crops of Mix; that, by his transfer of Mix's rent note to appellant, Collier parted with all interest he had in the crops of Mix, and therefore appellee, by its deed of trust, took nothing. Appellee contends, however, that appellant was estopped, by the waiver of its landlord's lien in favor of appellee, to contend that Collier's deed of trust in favor of appellee conveyed no interest in the crops of Mix.

We think appellee's position is sound. It was held in *Dreyfus* v. *Gage*, 84 Miss. 219, 36 So. 248, that an assignee of rent notes, given by a tenant to his landlord, was estopped to assert the priority of his landlord's lien against one who made advances to the tenant on the security of the landlord's waiver of his lien and the tenant's trust deed on the crops to be grown on the leased

premises, where such assignee had failed to divulge, to the person so making the advances and taking the deed of trust to secure the same, his ownership of the rent notes, thereby inducing the person so advancing the tenant to believe that the landlord's waiver and tenant's trust deed operated to give him a first lien on the crops. We think this case is strongly in point in favor of appellee's position. This question was not directly decided in *Chism Bros.* v. *Alcorn,* 71 Miss. 506, 15 So. 73, but the principle involved was discussed in this language:

"The plaintiffs testified in their own behalf, and positively denied that Mrs. Alcorn, either through her agent or personally, ever agreed to be bound for the payment of the account on which the suit is brought. Their cause of action, as stated by them, is not that she promised to pay and has neglected and refused to do so, but that she agreed to waive her lien, as landlord, upon the crops of Bush, her tenant, and that Bush might apply it to the payment of his account, and afterwards, in violation of that agreement, received the cotton grown by Bush and appropriated its proceeds to her demand for rent. If they had sued for money had and received to their use, or in action on the case, their testimony would have tended to support their action."

Appellant, by its waiver, induced appellee to extend credit to Collier, the tenant of appellant, to the extent of one thousand two hundred dollars. By the waiver appellee was led to believe that it could acquire a valid deed of trust on all of Collier's interest in the crops by whomsoever produced on the leased premises, and that such deed of trust would be paramount to the landlord's lien. The waiver could have meant nothing less than that to appellee. On the faith of the waiver, appellee took a deed of trust on Collier's interest in the entire crop. At the time the deed of trust was taken, it is true that Collier had no interest in the crops of Mix by virtue of the fact that he had transferred to appellant Mix's rent note; but appellant will not be heard to say that Col-

lier's interest in the crops of Mix had gone in that manner. Appellant is estopped by his waiver to so contend. At the time of the execution and delivery of its waiver, appellant was called on to speak on this subject—to divulge the fact that Collier had no interest in Mix's crops because the former had transferred the latter's rent note to appellant.

Collier was insolvent. Mix, with the consent of appellant, sold his crops and paid appellant out of the proceeds thereof his rent note of five hundred dollars. Appellee's only remedy, therefore, for the recovery of the rent of five hundred dollars which Mix agreed to pay Collier and which appellee was entitled to under its deed of trust, was to sue appellant therefor. Appellee was entitled to recover under the well-established principle that, where one person receives money which by right belongs to another person, the person entitled thereto may recover it. It may be recovered as money had and received by appellant for the use of appellee. The law implied a promise on the part of appellant to pay appellee the amount so received. *Roberts* v. *Ely,* 113 N. Y. 131, 20 N. E. 606; *Stanton* v. *Thomas,* 24 Wend. 70, 35 Am. Dec. 598; *Allen* v. *Mendelsohn & Son,* 207 Ala. 527, 93 So. 416, 31 A. L. R. 1063; *Farmers' Bank & Trust Co.* v. *Shut & Keihn,* 192 Ala. 53, 68 So. 363.

Appellant contends, however, that on the former appeal of this cause to this court, which appeal was granted to settle the principles of the cause, the court, in its response to the suggestion of error, declared the governing principles of law to be the exact converse of what the court is now holding in this case, and that the principles therein declared are the law of the case and must govern. It is true that the court said, in response to the suggestion of error on the former appeal, that, if Collier did not own the note at the time he gave the deed of trust to appellee and did not hold a lien against the crops of Mix at that time or thereafter, the title to the note of Mix did not pass to appellee by the deed of trust. It is

also true, as contended by appellant, that that statement by the court embodied a principle in conflict with what the court is now holding, but the statement was *dictum* as the cause was then before the court on its pleadings alone for the purpose of settling the law of the case as presented by the pleadings. The question as to the effect on the rights of the parties of the fact that Collier had parted with Mix's note when he executed the deed of trust in favor of appellee was not presented by the pleadings, and therefore not involved in the case. It follows that the statement by the court referred to does not constitute the law of the case. The judge who wrote the opinion in response to the suggestion of error did so without the brief in favor of the suggestion of error having been responded to by the other side. In that way he was probably led into stating a principle that was not called for by the case before the court.

*Affirmed.*

Ethridge, J.

I emphatically dissent from the majority opinion in this case. The trouble in this case is that the Delta Grocery & Cotton Company secured no right by its deed of trust against the crop of Mix, and could not have enforced its demand against Collier under its deed of trust against Mix's crop, had H. & C. Newman, Inc., never collected anything, or even if it had no demand; in other words, the Delta Grocery & Cotton Company must stand upon its deed of trust for its rights. There is nothing to show that it had any knowledge whatsoever of Mix's tenancy or any knowledge of a rent note given by Mix. This note had passed to H. & C. Newman before the deed of trust was given by Collier, and there is nothing in the deed of trust given by Collier to desribe any specific note or lien. It could obtain nothing by virtue of the language used in the deed of trust in reference to liens or claims, except such as Collier then had. It might be a different proposition, had the rent note of Mix been specifically

described.  The Delta Grocery & Cotton Company fur-
nished Mix nothing, and H. & C. Newman did not get
any of the agricultural products grown on the place by
Mix, but Mix paid them money in settlement of his rent
note.  Certainly a waiver of a lien is not an assignment
of a debt.

H. & C. Newman waived their landlord's lien, and, if
the Grocery Company had obtained a lien upon the crops
grown by Mix, then they would have had a prior right
*to resort to the produce grown upon the premises by Mix*
to the same extent that they would have, had the title
been in Collier at the time.  Had Collier owned the notes
at the time of giving the deed of trust, the deed of trust
would have been sufficient, as between Collier and the
Grocery Company, to have carried Collier's interest in
the crop.

I know of no decision holding that a mere waiver of a
lien precludes a party from collecting his debt, so long
as he does not resort to his lien to do so.  I think the au-
thorities cited by the majority opinion wholly fail to
support the decision now rendered.

*Dreyfus* v. *Gage,* 84 Miss. 219, 36 So. 248, is a case
where the appellee obtained a lien, and, further than
that, appellant had been active in inducing the party who
took the lien to do so, and had represented that, if he
took such lien, it would be a first lien.  I quote from the
statement of facts as follows:

''During the course of the dealings between Moore and
the attorneys for appellees, and before the final consum-
mation of the transaction, Dreyfus urged the attorneys
of appellees to make the loan to Moore, giving reasons
why he personally could not continue the business, and,
concealing the fact that he was the assignee of the rent
notes, he represented that a waiver from Mrs. F. S. Hick-
lin, the owner of the land, would give appellees a prime
lien on all the crops produced, and would make the loan
absolutely secure.  Acting on these representations, and
in complete ignorance of the fact that Dreyfus was the

holder of the rent notes, appellees' attorney demanded
and received a waiver to the amount of one. thousand
two hundred dollars from Mrs. F. S. Hicklin, had the se-
curities held by Dreyfus transferred to appellees, *took a
trust deed from Moore on crops and work stock,* closed
the loan, and forwarded the papers to the appellees. The
waiver of Mrs. F. S. Hicklin not being in form satisfac-
tory to appellees, they demanded and received another
waiver of rent, signed by her, and thereupon advanced
Moore a portion of the one thousand two hundred dol-
lars agreed on. Afterwards they required Moore to
furnish additional security, which being done, other
moneys were advanced during the year, aggregating a
sum in excess of the one thousand two hundred dollars
agreed on." (Italics mine.)

It will be seen from this quotation, and from the rest
of the statement in the court's opinion, that appellee
took a deed of trust on the property, and, after obtaining
that lien, there was an effort to assert a landlord's lien
by reason of the rent notes held at the time, etc.

Of course, it is familiar law that, where a person had
a lien upon property, and another person, with knowl-
edge thereof, converts that property, he is liable for the
conversion. But there is no fact in the case before us
showing that the Grocery Company ever acquired any
lien as against the crop grown by Mix, and it specifically
disclaims conversion as a ground for recovery.

The case of *Chism Bros.* v. *Alcorn,* 71 Miss. 506, 15 So.
73, was also a case where the party furnishing tenants
took security upon the crop, and the landlord, after
waiving her lien, took charge of the crop. That case,
however, supports my view, because, upon this waiver
by Mrs. Alcorn, Chism undertook to assert prime liabil-
ity against Mrs. Alcorn on the waiver. The court held,
as she had not agreed to pay the account, that a right of
action would not lie against her upon the account.

The court did intimate that, under another form, there
might be liability, but that was not predicated upon the

idea that Chism Bros. had acquired a lien on the crop, and that the landlord had taken charge of the crop. I quote the following from the statement of facts in that case to show the importance of having a lien as the foundation of the right of action:

"The testimony for plaintiffs tended to show that, in consideration of a waiver by appellants of her landlord's lien, and an agreement that the proceeds of the tenant's crop should be first applied to the payment of the debt, the goods were sold to the tenant to enable him to make a crop on the leased premises; that they were sold upon the security of the crop; and that plaintiff looked to that source for payment. There was enough cotton raised by the tenant to pay the account, and it was received and sold by appellee, who applied only one hundred dollars of the amount to the credit of the debt, appropriating the remainder to her own claims against the tenant.

In the case before us there is an attachment in chancery against a party waiving a lien founded on an action for money had and received. The *Chism* v. *Alcorn case, supra,* holds that there is, in a waiver, no personal liability for the debt. That is precisely what is being sought in the present case; but in this case no part of the produce grown by Mix passed to H. & C. Newman. The Delta Grocery & Cotton Company had no kind of lien on the produce, and the appellants H. & C. Newman took the currency of the country in payment of their note, and certainly there can be no kind of lien upon currency of the country, and no liability imposed by law for receiving currency of the country in payment of a debt. It is legal tender and passes from hand to hand, and H. & C. Newman were under legal duty to accept money in payment of their demand.

There is nothing whatsoever in the record to show that H. & C. Newman became personally liable for Collier's debt, or were liable in any personal way therefor. As stated above, the Grocery Company secured no lien,

and Mix was a stranger to the transaction between Collier and the Grocery Company.

The decision in this case is far reaching and mischievous and will make it exceedingly difficult and dangerous for any landlord or lienholder to waive a lien. It, in effect, will make them surety for payment of a debt.

When this case was here before, it came on appeal allowed to settle the principles of the case. One of the questions involved in that litigation was the effect of a waiver by H. & C. Newman. On first considering the case, we took the view that it was not necessary to decide the question now presented on the allegations of the bill. But a suggestion of error was filed, in which it was insisted earnestly, by able counsel, that we ought to decide this proposition, and the court did decide it.

Under the practice of this court, when a suggestion of error is filed, it first goes to a member who did not write the opinion, and that practice was followed when the case was here before, and, although I wrote the opinion on the suggestion of error, as well as the main opinion, it was done because the division, as a whole, thought it was proper and necessary to decide the point. It was certainly proper to so decide it in that appeal.